

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

TONYA DAVIS,                              )
                                         )
      **Plaintiff,**                   )
                                         )     **No. 13 C 3224**
    **v.**                                )
                                         )     **Chief Judge Ruben Castillo**
ERNEST B. FENTON, LAW OFFICE             )
OF ERNEST B. FENTON, P.C., and           )
LEGAL SERVICES, INC.,                    )
                                         )
      **Defendant.**                   )

## <u>MEMORANDUM OPINION AND ORDER</u>

Tonya Davis ("Plaintiff") brings this action against Ernest B. Fenton, the Law Office of Ernest B. Fenton, P.C. (the "Law Office"), and Legal Services, Inc. (collectively, "Defendants") alleging violations of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1982; attorney malpractice; and breach of contract. Presently before the Court are Defendants' motion to stay this action pending arbitration pursuant to Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, and Plaintiff's motion to consolidate cases pursuant to Federal Rule of Civil Procedure 42. For the reasons set forth below, the Court grants Defendants' motion to stay this action and denies as moot Plaintiff's motion to consolidate cases.

## RELEVANT FACTS

Plaintiff is an African American female and a resident of Cook County, Illinois. (R. 1, Compl. ¶¶ 3, 10.) Fenton is an attorney admitted to practice in Illinois and the president of the Law Office and Legal Services, Inc., which are Illinois domestic corporations. (*Id.* ¶¶ 1, 4.) Legal Services, Inc. is an independent client management company, and Fenton directs clients to remit payments owed to him to Legal Services, Inc. (R. 1-1, Ex. A, Retainer Agreement at 3.)

Plaintiff alleges that Fenton, through various advertisements, holds himself out to defend mortgage foreclosure actions on behalf of consumers. (*Id.* ¶ 1.) On or about September 25, 2010, Plaintiff consulted with Defendants about a mortgage foreclosure proceeding related to Plaintiff's residential property. (*Id.* ¶ 11.) Plaintiff alleges that Defendants advised her that she had good and complete defenses to the mortgage foreclosure action. (*Id.* ¶ 12.) On or about September 25, 2010, Plaintiff signed a retainer agreement that required Defendants to represent her in her mortgage foreclosure case in state court. (*Id.* ¶ 14.) The retainer agreement outlined the scope and representation to be provided by Defendants to Plaintiff, including: initial consultation and information gathering; consultation with Plaintiff regarding the foreclosure process; review of the foreclosure complaint or the acquisition of a loan status report, review of the loan documents; production of a written analysis or assessment of case issues; negotiation of a resolution with the mortgagee, be it forbearance, reinstatement, or a deed in lieu; and legal representation in court and with regards to redemption with private funding sources, an open market sale, a closed sale, or a sale-leaseback. (*Id.* ¶ 13; R. 1-1, Ex. A, Retainer Agreement at 1-2.) The retainer agreement also contains an arbitration clause that states:

> In the event that there is a dispute between ATTORNEY(S) and CLIENT regarding any provision in this agreement, or the outcome of the matter for which CLIENT retained ATTORNEY(S), ATTORNEY(S) and CLIENT agree to submit the dispute to binding arbitration at the American Arbitration Association for resolution. As such, CLIENT understands that in the event of such a dispute, CLIENT acknowledges and understands that CLIENT waives all rights to a trial by jury.

(R. 1-1, Ex. A, Retainer Agreement at 5-6.)

Plaintiff alleges that the Law Office filed its appearance on or about November 1, 2010, but "filed nothing else on [her] behalf for almost one year." (R. 1, Compl. ¶ 18.) Plaintiff alleges that Defendants filed no answer or other substantive pleadings on her behalf. (*Id.*)

2

Consequently, a judgment of foreclosure and sale was entered in January 2011. (*Id.* ¶ 20.)
Defendants filed an emergency motion to stay the sale in October 2011, and an order was entered
on October 4, 2011, staying the sale through November 4, 2011. (*Id.* ¶¶ 19, 21). Defendants
filed another motion to stay the sale on or about November 2011, which was denied as moot on
November 18, 2011, because the bank stayed the sale on its own accord. (*Id.* ¶ 19.) Plaintiff
alleges that as a direct and proximate cause of Defendants' failure to act on her behalf, an order
confirming sale and possession was entered, depriving Plaintiff of legal title to her home and
causing her to face eviction. (*Id.* ¶ 22.)

Plaintiff alleges that Defendants failed to exercise reasonable care in fulfilling the retainer
agreement. (*Id.* ¶ 30.) Plaintiff further alleges that during the course of her representation,
Defendants failed to exercise reasonable care, skill, and diligence as ordinarily exercised by
other attorneys in the community. (*Id.* ¶ 24.) Additionally, Plaintiff alleges that at all relevant
times, Defendants discriminatorily recruited clients on the basis of race by targeting its
advertising at African Americans. (*Id.* ¶ 28.)

## PROCEDURAL HISTORY

Plaintiff initiated this action on April 4, 2013, by filing a four-count complaint. (*Id.*) In
Count I, Plaintiff alleges that Defendants violated the Fair Housing Act ("FHA") by targeting
Plaintiff for inferior services relating to real estate transactions because of her race and by
generally engaging in advertising that is designed to target African Americans. (*Id.* ¶¶ 36-46.)
In Count II, Plaintiff alleges that Defendants violated sections 1981 and 1982 of the Civil Rights
Act of 1866 by denying Plaintiff her right to hold real property based on her race and by offering
her a contract that was different in its performance, making, and conditions from contracts
offered to white individuals. (*Id.* ¶¶ 47-50.) In Count III, Plaintiff alleges attorney malpractice,

claiming that Defendants breached their fiduciary duty of care. (*Id.* ¶¶ 51-62.) In Count IV, Plaintiff alleges breach of contract, claiming that Defendants failed to fulfill the terms of the retainer agreement. (*Id.* ¶¶ 63-77.)

On July 3, 2013, Defendants filed a motion to stay this action as referable to arbitration. (R. 14, Defs.' Mot. Stay.) Plaintiff filed her response to Defendants' motion to stay on July 24, 2013, (R. 17, Pl.'s Resp.), and Defendants filed a reply on July 30, 2013, (R. 18, Defs.' Reply).

Also on July 3, 2013, Fenton and the Law Office filed a lawsuit in the Circuit Court of Cook County against Plaintiff's attorneys, Kelli Dudley and Andrew Sidea, alleging conversion, tortious interference with a business relationship, and defamation and slander. *Fenton v. Dudley*, No. 13 L 066047. Dudley and Sidea removed the case to this District on July 14, 2013. On August 27, 2013, Plaintiff filed a motion, asking the Court to consolidate this case with *Fenton v. Dudley*, which was then pending before Judge Rebecca Pallmeyer. (R. 20, Pl.'s Mot. Consolidate.) On January 3, 2014, Judge Pallmeyer granted Fenton's motion to remand *Fenton v. Dudley* back to the Circuit Court of Cook County. *See Fenton v. Dudley*, No. 13 C 5019, 2014 WL 144676 (N.D. Ill. Jan. 3, 2014).

## LEGAL STANDARDS

The FAA embodies a federal policy favoring enforcement of arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The relevant language of the FAA provides that an arbitration clause in a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts are to uphold and enforce applicable arbitration agreements according to their terms unless they are invalidated by "generally applicable contract defenses,

such as fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011) (quoting 9 U.S.C. § 2).

A court must determine whether the parties are bound by a given arbitration agreement and whether the agreement to arbitrate applies to a particular type of controversy. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). In determining whether parties have agreed to arbitrate, courts apply state contract law. *James v. McDonald's Corp.*, 417 F.3d 672, 677 (7th Cir. 2005) (citing *First Options of Chi. Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). If a valid agreement to arbitrate exists between the parties, the burden is on the party opposing arbitration to show that the claims at issue are not covered by the agreement. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). Upon being satisfied that the claims at issue are referable to arbitration under a valid agreement, a court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Any doubts concerning the scope of arbitrable issues must be resolved in favor of arbitration, *Moses H. Cone*, 460 U.S. at 24-25; *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012), and a request for arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960).

**ANALYSIS**

Plaintiff argues that this case is not referable to arbitration because: (1) not all parties are governed by the arbitration clause; (2) the arbitration clause is procedurally and substantively unconscionable; (3) the claims she has asserted fall outside the scope of the arbitration clause;

and (4) Defendants have waived their right to seek arbitration.  The Court addresses each of

Plaintiff's arguments in turn.

**I.      Whether all parties are bound by the arbitration clause**

       Plaintiff argues that the retainer agreement, which contains the arbitration clause, is a

contract that is between only the Law Office and Plaintiff.  (R. 17, Pl.'s Resp. ¶ 5.)  Plaintiff

therefore argues that the arbitration clause can only be enforced by the Law Office and not by

Fenton and Legal Services, Inc., who Plaintiff contends are not parties to the contract.  (*Id.*)

Federal courts apply state contract law when deciding whether the parties agreed to arbitrate

certain issues.  *James*, 417 F.3d at 677.  Under Illinois law, if the terms of the contract are

unambiguous, the Court must enforce the contract as written.  *Hampton v. Ford Motor Co.*, 561

F.3d 709, 714 (7th Cir. 2009) (citing *Rakowski v. Lucente*, 472 N.E.2d 791, 794 (Ill. 1984);

*Farmers Auto. Ins. Ass'n v. Wroblewski*, 887 N.E.2d 916, 923 (Ill. 2008)).  Additionally, the

Court "must interpret the words of the contract with their common and generally accepted

meanings" and "construe the words of a contract within the context of the contract as a whole."

*William Blair & Co., LLC v. FI Liquidation Corp.*, 830 N.E.2d 760, 770 (Ill. App. Ct. 1st Dist.

2005) (citations omitted).

       The retainer agreement specifies who the parties are in the first paragraph:

> This Agreement is entered into by and between the LAW OFFICE OF ERNEST
> B. FENTON, called "ATTORNEY(s)" and Tanya [sic] Davis called "CLIENT."
> CLIENT hires the LAW OFFICE OF ERNEST B. FENTON, and any
> ATTORNEY(S), law clerks, paralegals, and legal assistants, hired (as employees
> or independent contractors) now or in the future by them to do the work as
> outlined herein for the property commonly known as 3521 E. 173rd Place,
> Lansing, IL 60438.

(R. 1-1, Ex. A, Retainer Agreement at 1.) Thus, the retainer agreement clearly states that

Plaintiff hires the Law Office and *any of its attorneys* to work on her case. These same attorneys

are subject to the arbitration clause, which states in relevant part:

> In the event that there is a dispute between ATTORNEY(S) and CLIENT
> regarding any provision in this agreement, or the outcome of the matter for which
> CLIENT retained ATTORNEY(S), ATTORNERY(S) and CLIENT agree to
> submit the dispute to binding arbitration at the American Arbitration Association
> for resolution.

(*Id.* at 5.) Reading these two parts of the retainer agreement together, it is clear that Fenton, as

an attorney of the Law Office, is a party to the arbitration clause. *See William Blair*, 830 N.E.2d

at 770. The Court therefore concludes that Fenton and the Law Office are parties to the

arbitration clause and, consequently, can enforce the arbitration clause.

## II.     Whether the arbitration clause is unconscionable

Plaintiff argues that the arbitration clause is invalid and unenforceable because it is both

procedurally and substantively unconscionable. (R. 17, Pl.'s Resp. at 8.) Federal courts look to

state contract law to determine whether a valid arbitration agreement between the parties exists.

*Koveleski v. SBC Capital Markets, Inc.*, 167 F.3d 361, 366-67 (7th Cir. 1999) (quoting *Gibson v.

Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997)). Under Illinois law, "a

contract is unconscionable when, viewed as a whole, 'it is improvident, oppressive, or totally

one-sided.'" *We Care Hair Dev., Inc. v. Engen*, 180 F.3d 838, 843 (7th Cir. 1999) (quoting

*Streams Sports Club, Ltd. v. Richmond*, 457 N.E.2d 1226, 1232 (Ill. 1983)). "A finding of

unconscionability may be based on either procedural or substantive unconscionability, or a

combination of both." *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 263 (Ill. 2006) (citing

*Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 622 (Ill. 2006)).

## A.      Whether the arbitration clause is procedurally unconscionable

First, Plaintiff argues that the arbitration clause is invalid and unenforceable because it is procedurally unconscionable. (R. 17, Pl.'s Resp. at 9.) "Procedural unconscionability consists of some impropriety during the process of forming the contract depriving a party of a meaningful choice." *Frank's Maint. & Eng'g, Inc. v. C. A. Roberts Co.*, 408 N.E.2d 403, 410 (Ill. App. Ct. 1st Dist. 1980) (internal citations omitted). Illinois courts have found that procedural unconscionability can refer "to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it." *Kinkel*, 857 N.E.2d at 264 (quoting *Razor*, 854 N.E.2d at 622). In determining whether a contract is procedurally unconscionable, the Court should consider "all the circumstances surrounding the transaction including the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print." *Id.* (quoting *Frank's Maint.*, 408 N.E.2d at 410). While "both the conspicuousness of the clause and the negotiations relating to it are important," they are "not conclusive factors in determining the issue of unconscionability." *Id.* (quoting *Frank's Maint.*, 408 N.E.2d at 410).

Plaintiff argues that the arbitration clause is procedurally unconscionable because no one at the Law Office explained to her: (1) that there was an arbitration clause in the retainer agreement; (2) that she would be giving up important legal rights including the right to a trial; and (3) that she would have to pay part of the cost of arbitration. (R. 17, Pl.'s Resp. at 9.) Under Illinois contract law, "a party to an agreement is charged with knowledge of and assent to the agreement signed." *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 108 (Ill. 2006). Plaintiff signed the retainer agreement on the last page acknowledging that "the parties have read and

understood the foregoing terms and agree to them as of the date attorney(s) first provided services." (R. 1-1, Ex. A, Retainer Agreement at 6) (emphasis omitted). Thus, by signing the retainer agreement, Plaintiff acknowledged that she read and understood the terms of the agreement including the arbitration clause. Therefore, Plaintiff's argument that no one informed her that there was an arbitration clause in the agreement or what that arbitration clause meant is immaterial. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809 (7th Cir. 2011) ("Ignorance of the contract's arbitration provision is no defense if [the plaintiff] failed to read the contract before signing." (citing *Breckenridge v. Cambridge Homes, Inc.*, 616 N.E.2d 615, 620 (Ill. App. Ct. 2d Dist. 1993))); *Dorsey v. H.C.P. Sales, Inc.*, 46 F. Supp. 2d 804, 807 (N.D. Ill. 1999) ("[A] party's failure to read a contract does not invalidate unread contractual terms or excuse that party's performance under the contract.").

Additionally, Plaintiff argues that the arbitration clause is buried at the bottom of the fifth page trailing to the top of the sixth page of the retainer agreement, and that it is not in bold or any special font to call attention to it. (R. 17, Pl.'s Resp. at 9.) An arbitration clause does not need to be emphasized with any special font or typeface to prevent it from being procedurally unconscionable; it just needs to be conspicuous. *See Kinkel*, 857 N.E.2d at 264; *All Am. Roofing, Inc., v. Zurich Am. Ins. Co.*, 934 N.E.2d 679, 692 (Ill. App. Ct. 1st Dist. 2010) (finding that an arbitration clause within a document with "full-size font, with introductory titles and subtitles," and with each paragraph "set off by a blank line above and below" was readable and therefore not procedurally unconscionable). Here, the arbitration clause is separated into its own section numbered 17, and is labeled "ARBITRATION CLAUSE" in all capital bold letters. (R. 1-1, Ex. A, Retainer Agreement at 5-6.) The text of the arbitration clause is in the same font and size as the rest of the retainer agreement. (*Id.*) And although the arbitration clause starts at the bottom

of the fifth page and continues on to the top of the sixth page, the section is set off by a blank line above and below it, clearly separating section 17 from sections 16 and 18, and making it easy to read. (*Id.*) The arbitration clause is thus not "hidden in a maze of fine print." *See Kinkel*, 857 N.E.2d at 264 (quoting *Frank's Maint.*, 408 N.E.2d at 410). The Court therefore cannot conclude that the placement of the arbitration clause and its font size and typeface make it procedurally unconscionable.

The fact that the arbitration clause does not mention the costs of arbitration is one factor to consider in determining whether the arbitration clause is procedurally unconscionable, but it is not conclusive. *Kinkel*, 857 N.E.2d at 266. The Court finds that this factor alone is not enough to amount to procedural unconscionability. *See id.* (finding a degree of procedural unconscionability in the agreement because it did not inform plaintiff of the costs of arbitration, but that degree of procedural unconscionability was not sufficient to render the agreement unenforceable without also considering whether the agreement was substantively unconscionable).

Finally, Plaintiff argues that she cannot afford the fees and costs of arbitration. (R. 17, Pl.'s Resp. at 10.) When "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree Fin.*, 531 U.S. at 92. "In order to meet her burden, the party must provide some individualized evidence to show that she is likely to face prohibitive costs in the arbitration and that she is financially incapable of meeting those costs." *Bess v. DirecTV, Inc.*, 885 N.E.2d 488, 498 (Ill. App. Ct. 5th Dist. 2008) (citing *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003)). "The 'risk' that [Plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement."

10

*Green Tree Fin.*, 531 U.S. at 91. Here, Plaintiff has provided no evidence demonstrating what the costs of arbitration would be or any evidence regarding her financial situation. She has sworn under oath that she cannot afford to pay for arbitration. (R. 17-8, Ex. H ¶ 7.) Plaintiff's bare assertions that the fees and costs of arbitration would be prohibitively expensive are not enough to meet her burden to prove that the arbitration clause is procedurally unconscionable.

### B.     Whether the arbitration clause is substantively unconscionable

Next, Plaintiff alleges that the arbitration clause is invalid and unenforceable because it is substantively unconscionable. (R. 17, Pl.'s Resp. at 11.) "Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed, asking whether the terms are so one-sided as to oppress or unfairly surprise an innocent party." *Phoenix Ins. Co. v. Rosen*, 949 N.E.2d 639, 647 (Ill. 2011) (quoting *Kinkel*, 857 N.E.2d at 267) (internal quotation marks omitted).

Plaintiff contends that the arbitration clause is one-sided because it is unlikely that Defendants would need to initiate arbitration proceedings against Plaintiff. (R. 17, Pl.'s Resp. at 11.) Plaintiff contends that it is unlikely that Defendants would have a dispute with Plaintiff over a contract provision and unlikely that Defendants would dispute with themselves over the outcome of the case, the two areas governed by the arbitration clause. (*Id.* at 11.) Plaintiff is incorrect in her assessment, however, because she overlooks the possibility that Defendant would need to initiate arbitration proceedings against Plaintiff to recover any unpaid fees and costs. Putting that fact aside, Plaintiff's argument that the arbitration clause is too one-sided to be enforceable is not supported by Illinois law. Under Illinois law, mutuality of obligation is required only "to the extent that both parties to an agreement are bound or neither is bound. If the requirement of consideration has been met[,] mutuality of obligation is not essential." *S.J.*

11

*Groves & Sons Co. v. State*, 444 N.E.2d 131, 134 (Ill. 1982), *overruled on other grounds by*

*Rossetti Contracting Co. v. Court of Claims*, 485 N.E.2d 332 (Ill. 1985) (internal citations and

quotation marks omitted). In other words, parties to a contract need not undertake identical

obligations. *Dorsey*, 46 F. Supp. 2d at 807; *see also Kroll v. Doctor's Assoc., Inc.*, 3 F.3d 1167,

1171 (7th Cir. 1993) ("[P]arties can agree to arbitrate some disputes and not others . . . [and] not

undermine the mutuality of the . . . arbitration provision." (internal citations omitted)); *Morgan v.*

*Bill Kay Chrysler Plymouth*, No. 01 C 3871, 2002 WL 31133102, at *4 (N.D. Ill. July 17, 2002)

("Applying Illinois law, numerous courts in this district have rejected the position that for an

arbitration agreement to be mutual, both sides must promise to arbitrate at least some specified

set of claims."). Here, the retainer agreement is supported by consideration on both sides, and

Plaintiff does not argue otherwise. Therefore, even if Defendants never have to initiate

arbitration proceedings against Plaintiff, the Court finds that the arbitration clause is mutual and

not one-sided. Accordingly, the Court finds that the arbitration clause is not substantively

unconscionable.

 Having found that the parties entered into a valid and enforceable arbitration agreement,

the Court must now determine whether Plaintiff's claims fall within the scope of the arbitration

clause.

### III. Whether the arbitration clause applies to Plaintiff's claims

 Plaintiff alleges that her claims against Defendant do not fall within the scope of the

arbitration clause. (R. 17, Pl.'s Resp. at 6.) The arbitration clause states that any dispute

between Defendants and Plaintiff "regarding any provision in this agreement, or the outcome of

the matter for which CLIENT retained ATTORNEY(S)" is subject to arbitration. (R. 1-1, Ex. A,

Retainer Agreement at 5.)  Plaintiff contends that her claims do not concern a provision of the retainer agreement or the outcome of the case.  (R. 17, Pl.'s Resp. at 6.)

"To determine the scope of [an arbitration clause], the court must examine both the wording of the particular clause and the terms of the parties' contract." *J & K Cement Constr., Inc. v. Montalbano Builders, Inc.*, 456 N.E.2d 889, 895 (Ill. App. Ct. 2d Dist. 1983).  With respect to examining the language of the arbitration clause, the Seventh Circuit has repeatedly held that the language "arising out of" and "relating to" is extremely broad and creates a "presumption of arbitrability" that "reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se." *Gore*, 666 F.3d at 1033-34 (quoting *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993)); *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909-10 (7th Cir. 1999) (describing an arbitration clause with the language "arising out of or relating to" as "extremely broad and capable of an expansive reach," creating a "presumption of arbitrability").  Here, the arbitration clause contains the term "regarding," which is just as broad of a term as "arising out of" and "relating to." *See Oxford English Dictionary* (3d ed. 2007) (defining "regarding" as "[i]n reference or relation to; about, concerning").  Consequently, because the arbitration clause is broad in scope, Plaintiff bears the heavy burden of rebutting the presumptive arbitrability of her claims. *See Gore*, 666 F.3d at 1034.  With this presumption of arbitrability in mind, the Court now analyzes each of Plaintiff's claims individually to determine whether they are subject to arbitration.

### A.  Whether Plaintiff's claims under the Fair Housing Act (Count I) fall within the scope of the arbitration clause

In Count I, Plaintiff alleges that Defendants treated her differently in mortgage lending and loan modification decisions based on her race in violation of section 3604(b), section

3604(c), and section 3605 of the FHA. (R. 1, Compl. ¶¶ 36-46.) Plaintiff argues that these claims concern Defendants' overall conduct and discrimination toward African Americans, and do not concern a provision of the retainer agreement or the outcome of her mortgage foreclosure case. (R. 17, Pl.'s Resp. at 6.)

Section 3605 of the FHA prohibits discrimination by any person or other entity whose business includes engaging in residential real estate-related transactions. 42 U.S.C. § 3605(a). The FHA defines residential real estate-related transactions as "[t]he making or purchasing of loans or providing other financial assistance" related to residential real estate, and "[t]he selling, brokering, or appraising of residential real property." 42 U.S.C. § 3605(b). Although Plaintiff has alleged in the complaint that Defendants have violated section 3605, courts in this District have held that section 3605 applies only to transactions involving defendants that are lenders, brokers, or appraisers of mortgage loans. *See Davis v. Wells Fargo Bank*, 685 F. Supp. 2d 838, 844 (N.D. Ill. 2010); *Jones v. Countrywide Home Loans, Inc.*, No. 09 C 4313, 2010 WL 551418, at *7 (N.D. Ill. Feb. 11, 2010) (finding that section 3605 did not apply to defendant because defendant "was neither the lender, nor the broker, nor the appraiser of [plaintiff's] mortgage loan, nor did it provide any other financial assistance in the transaction"); *Moore v. F.D.I.C.*, No. 08 C 596, 2009 WL 4405538, at *5 (N.D. Ill. Nov. 30, 2009) (dismissing a section 3605 claim because plaintiffs had not alleged that they attempted to engage in a real estate-related transaction with defendant, but rather alleged misconduct occurring post-default). Defendants are not lenders, brokers, or appraisers, and so Plaintiff's attempt to bring a claim against them under section 3605 is misguided.

Section 3604(c) makes it unlawful "[t]o make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of

a dwelling that indicates any preference, limitation, or discrimination based on race . . . ." 42

U.S.C. § 3604(c). Although Plaintiff has alleged in the complaint that Defendants violated

section 3604(c) by engaging in advertising that was designed to target African Americans, the

Seventh Circuit has applied this section only to situations involving defendants who were

engaged in the sale or rental of a dwelling. *See, e.g.*, *White v. U.S. Dep't of Hous. & Dev.*, 475

F.3d 898, 904 (7th Cir. 2007) (to establish a section 3604(c) claim, plaintiff needed to show

"that: (1) [defendant] made a statement; (2) the statement was made with respect to the sale or

rental of a dwelling; and (3) the statement indicated a preference, limitation, or discrimination

against her"); *Jancik v. Dep't of Hous. & Urban Dev.*, 44 F.3d 553, 556-57 (7th Cir. 1995)

(finding that a landlord violated section 3604(c) because his advertisements for the rental of an

apartment expressed a preference based on family status). Because Defendants were not

engaged in the business of selling or renting homes, Plaintiff's claim under section 3604(c) is

also misguided. Therefore, out of the three violations Plaintiff has pleaded under the FHA, only

section 3604(b) gives rise to a possible cause of action.

Section 3604(b) has been interpreted more broadly by the Seventh Circuit than sections

3604(c) and 3605. Section 3604(b) makes it unlawful "[t]o discriminate against any person in

the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services

or facilities in connection therewith, because of race . . . ." 42 U.S.C. § 3604(b). The Seventh

Circuit has adopted a broad reading of the term "services" and has interpreted the section to

cover discriminatory provision of services generally, not just services provided by governmental

units. *See N.A.A.C.P. v. Am. Family Mut. Ins. Co*, 978 F.2d 287, 299-300 (7th Cir. 1992). The

Court has applied section 3604(b) to "discriminatory denials of insurance, and discriminatory

pricing, that effectively preclude ownership of housing because of the race of the applicant." *Id.*

15

at 301.  Additionally, a court in this District has interpreted the Seventh Circuit's broad reading

of the section to include "discriminatory services in administering a mortgage." *Davis v. Wells*

*Fargo Bank*, No. 07 C 2881, 2008 WL 1775481, at *6 (N.D. Ill. Apr. 17, 2008).  Defendants did

not file a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim,

and for the purposes of this motion to stay, the Court assumes that the term services in section

3604(b) is broad enough to include discriminatory legal assistance in a mortgage foreclosure

case.  Assuming section 3604(b) encompasses Plaintiff's claim, the Court will determine whether

her claim falls within the scope of the arbitration clause.

Plaintiff alleges that Defendants discriminated against her and other African Americans

in the provision of services related to the sale or rental of a dwelling—legal assistance in

mortgage foreclosure cases.  (R. 1, Compl. ¶¶ 38, 46.)  She argues that this race-based

discrimination claim does not concern a provision of the retainer agreement or the outcome of

her mortgage foreclosure case and thus is not covered by the arbitration clause.  (R. 17, Pl.'s

Resp. at 6.)  The Court, however, disagrees.  One of the provisions of the retainer agreement is

Plaintiff's retention of Defendants to represent her in her mortgage foreclosure case.  (R. 1-1, Ex.

A, Retainer Agreement, at 1) ("CLIENT hires the LAW OFFICE OF ERNEST B. FENTON, and

any ATTORNEY(S) . . . to do work as outlined herein . . . .").  Another provision of the retainer

agreement outlines the scope of legal services Defendants agreed to perform.  (*Id.* at 1-2)

("CLIENT hires ATTORNEY(S) to provide some or all of the following legal services: 1. Initial

Consultation and Information Gathering[;] 2. Consult with CLIENT regarding the foreclosure

process[;] 3. Review Foreclosure Complaint or Obtain Loan Status Report . . . [;] 4. Provide a

Written Analysis or Assessment of Case Issues[;] 5. Advise and Negotiate Resolution with

Mortgagee . . . [;] 6. Provide Legal Representation . . . ").  Plaintiff's section 3604(b) claim that

Defendants discriminated against her by providing her with inadequate legal services thus turns on the retention of Defendants to provide her with legal assistance. Plaintiff's section 3604(b) claim, therefore, is in regards to the provisions of the retainer agreement. The Court thus concludes that Plaintiff's section 3604(b) claim is covered by the arbitration clause in the retainer agreement. Additionally, even if the Court had doubts as to whether the arbitration clause includes Plaintiff's FHA claim, the Court would be required to resolve those doubts in favor of arbitration. *Moses H. Cone*, 460 U.S. at 24-25. The Court thus finds that Plaintiff's FHA claim is covered by the arbitration clause.

### B. Whether Plaintiff's claims under the Civil Rights Act (Count II) fall within the scope of the arbitration clause

In Count II, Plaintiff alleges that Defendants violated sections 1981 and 1982 of the Civil Rights Act of 1866. (R. 1, Compl. ¶¶ 47-50.) Section 1981 states, in pertinent part, that "[a]ll persons within the United States shall have the same right in every State and Territory to make and enforce contracts . . . ." 42 U.S.C. § 1981(a). Plaintiff alleges that Defendants "illegally offered [her] a contract that was different in its performance, making, and conditions from contracts offered to white citizens based solely on [her] race." (R. 1, Compl. ¶ 50.) Section 1982 states that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. Plaintiff alleges that "Defendants' actions denied [Plaintiff] of her rights to hold real property based solely on her African-American race." (R. 1, Compl. ¶ 50.) Plaintiff contends that her section 1981 and section 1982 claims, in which she alleges she was treated differently because of her race, do not concern a provision of the retainer agreement or the outcome of her mortgage foreclosure case and are therefore not covered by the arbitration clause. (R. 17, Pl.'s Resp. at 7.)

Plaintiff's section 1981 claim alleges that Defendants treated her differently because of her race by having her sign a retainer agreement that was different from retainer agreements offered to white citizens. (R. 1, Compl. ¶ 50.) Her claim, therefore, is at its core in regards to the provisions of the retainer agreement. In her section 1982 claim, Plaintiff alleges that Defendants provided inadequate legal services because of her race and, in doing so, caused her to lose her rights to hold real property. (*Id.*) Because Plaintiff's section 1982 claim hinges on the loss of her real property, it is in regards to the outcome of her mortgage foreclosure case. Accordingly, the Court finds that Plaintiff's section 1981 and section 1982 claims fall within the scope of the arbitration clause.

### C.     Whether Plaintiff's attorney malpractice claim (Count III) and breach of contract claim (Count IV) fall within the scope of the arbitration clause

In Count III, Plaintiff alleges that Defendants breached their fiduciary duty to her by committing attorney malpractice. (R. 1, Compl. ¶¶ 51-62.) In Count IV, Plaintiff asserts a breach of contract claim, alleging that Defendants failed to fulfill the terms of the retainer agreement. (*Id.* ¶¶ 63-77.) Plaintiff offers no response to Defendants' argument that these claims fall within the scope of the arbitration clause. Instead, Plaintiff reiterates that Defendants failed to file an answer or otherwise plead and made no attempt to vacate the judgment against her. (R. 17, Pl.'s Resp. at 7.) Both of Plaintiff's claims in Counts III and IV involve assertions that Defendants either failed to perform the legal services they were or should have been obligated to perform under the retainer agreement, or performed the services inadequately. It is clear that Plaintiff's attorney malpractice and breach of contract claims are in regards to the provisions of the retainer agreement, and the Court concludes that both of these claims fall within the scope of the arbitration clause.

## IV.     Whether Defendants have waived their right to arbitrate

Having determined that the arbitration clause covers Plaintiff's claims, the Court must now determine whether Defendants have waived their right to arbitrate. Plaintiff states that despite Defendants' knowledge of the arbitration clause, they: (1) filed a status report; (2) prepared and sent to Plaintiff a proposed motion to dismiss; and (3) filed a separate case retaliating against Plaintiff's attorneys in the Circuit Court of Cook County and obtained a temporary restraining order preventing Plaintiff's attorneys from investigating the instant case. (R. 17, Pl.'s Resp. at 12-13.) Plaintiff asserts that by litigating this case and the state court case, Defendants have waived their right to pursue arbitration. (*Id.* at 13.) Defendants contend that Plaintiff's argument fails because they diligently invoked their right to arbitrate and limited their participation in this litigation to complying with the Court's order to file a joint status report. (R. 18, Defs.' Resp. at 13.)

"Waiver can either be express or inferred." *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods Co.*, 969 F.2d 585, 587 (7th Cir. 1992). Here, Defendants have not expressly waived their right to arbitrate, so the Court must determine whether they have implicitly done so. The Seventh Circuit has instructed that "[n]o rigid rule exists as to what constitutes a waiver of the right to arbitrate. Instead, the issue depends on the circumstances of each particular case." *Id.* at 587-88. The Court must examine the "totality of the circumstances" and determine whether the party seeking arbitration "acted inconsistently with the right to arbitrate." *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011) (citing *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004)). The diligence, or lack thereof, of the party seeking arbitration is an important consideration in deciding whether there has been a waiver. *Cabinetree of Wisc., Inc. v.*

*Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995). Other important factors include whether the party seeking arbitration substantially delayed its request for arbitration, participated in litigation, or participated in discovery. *St. Mary's*, 969 F.2d at 589-91. Additionally, although prejudice to the party resisting arbitration is not required to find waiver, "it is a relevant factor in the totality-of-the-circumstances analysis." *Kawasaki*, 660 F.3d at 994 (citing *St. Mary's*, 969 F.2d at 590). Because of the strong federal policy favoring enforcement of arbitration agreements, "parties asserting waiver bear a 'heavy burden' and courts should not 'lightly infer' waiver." *St. Mary's*, 969 F.2d at 590.

Plaintiff argues that by filing a status report and preparing and sending to Plaintiff a proposed motion to dismiss, Defendants chose to litigate the case. (R. 17, Pl.'s Resp. at 12.) Before Defendants were required to answer Plaintiff's complaint or otherwise plead, the Court ordered the parties to file a joint status report in anticipation of a settlement conference. (R. 6, Min. Entry.) Defendants filed their status report as directed and stated in the report that Plaintiff's breach of contract claim should be submitted to arbitration in accordance with the retainer agreement. (R. 9, Status Report at 3.) Defendants proceeded to file their motion to stay these proceedings pending arbitration on July 3, 2013. (R. 14, Defs.' Mot. Stay.) The Court concludes that Defendants' filing of the status report as directed by the Court does not support a finding that Defendants acted inconsistently with an intention to arbitrate. Defendants raised the issue of arbitration in their status report indicating that they wished to proceed to arbitration on at least one claim. Additionally, Defendants filed their motion to stay in the incipient stages of the litigation process, before any substantive motions had been filed or any substantive rulings had been made and before discovery had been initiated. *See Kawaski Heavy Indus.*, 660 F.3d at 994-96; *Hoenig v. Karl Knauz Motors, Inc.*, No. 13 C 0866, 2013 WL 5701400, at *8 (N.D. Ill. Oct.

20

16, 2013) (a defendant who invoked its right to arbitrate only one month after it filed its initial answer and three months after the plaintiff filed the complaint did not waive its right to arbitrate).

Plaintiff's argument that Defendants waived their right to arbitrate because they sent Plaintiff a proposed motion to dismiss is unsupported by case law. Defendants never filed the motion to dismiss; even if they had filed it with the Court, the Seventh Circuit has repeatedly held that a party does not waive its right to arbitrate by filing a motion to dismiss. *Kawasaki*, 660 F.3d at 995-96 (citing *Faulkenberg*, 637 F.3d at 807); *Sharif*, 376 F.3d at 726.

Finally, Plaintiff argues that by filing a separate case in state court against Plaintiff's attorneys and moving for a temporary restraining order, Defendants waived their right to arbitrate this case. (R. 17, Pl.'s Resp. at 12-13.) Plaintiff cites *Pohlman v. NCR Corporation*, No. 12 cv 6731, 2013 WL 3776965 (N.D. Ill. July 17, 2013), in support of this argument, but, the court in *Pohlman* granted the defendant's motion to compel arbitration. The court held that the defendant's involvement in prior litigation that involved the same causes of action but had different named parties and involved a similar but separate set of facts did not constitute waiver of the right to arbitrate in the case at hand. *Pohlman*, 2013 WL 3776965, at *5 (Defendant's "involvement in a separate case in the judicial setting is not a waiver to the right to arbitrate in the present case." (citing *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 133 (2d Cir. 1997))). Similarly here, Defendant's state court case involves different named parties from the present case (Plaintiff's lawyers instead of Plaintiff herself) and involves a similar but separate set of facts. Therefore, Defendants' involvement in the state court case is not a waiver of their right to arbitrate this case.

Considering the totality of the circumstances, the Court concludes that Defendants did not act inconsistently with their right to arbitrate and did not waive their right to arbitrate. Accordingly, the Court must stay these proceedings pending arbitration.

**V.      Plaintiff's motion to consolidate cases**

Plaintiff's motion to consolidate the present case with *Fenton v. Dudley*, No. 13 C 5019 (N.D. Ill. filed July 3, 2013) is denied as moot because Judge Pallmeyer remanded the case to Illinois state court. *See Fenton*, 2014 WL 144676, at *8.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to stay this action pending arbitration (R. 14) is GRANTED and Plaintiff's motion to consolidate cases (R. 20) is DENIED as moot. The Court will stay the case pending arbitration. The Court has reviewed Plaintiff's motion to amend the complaint and her proposed amended complaint (R. 26; R. 27); because the proposed amended complaint would not change the outcome of this decision, the Court denies Plaintiff's motion.

**ENTERED:**

**Chief Judge Ruben Castillo**
**United States District Court**

**Dated: February 7, 2014**