**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TONYA DAVIS, | ) | Case No.:  13-cv-3224 |
| | ) | |
| Plaintiff, | ) | **<u>JURY TRIAL DEMANDED</u>** |
| | ) | |
| v. | ) | |
| | ) | |
| ERNEST FENTON; LAW OFFICE OF | ) | |
| ERNEST B. FENTON, P.C. | ) | |
| and LEGAL SERVICES, INC. | ) | |
| Defendant. | ) | |

**COMPLAINT FOR VIOLATION OF THE FAIR HOUSING ACT'S PROHIBITION OF
INTIMIDATION, RETALIATION, AND INTERFERENCE, 42 U.S.C § 3617**

*NOTE: THIS IS A COPY OF THE PROPOSED AMENDED COMPLAINT ANTICIPATED
PRE-ARBITRATION WITH ISSUES DISPOSED OF AT ARBITRATION ELIMINATED,
SIGNATURE CHANGED TO REFLECT CURRENT COUNSEL, AND RE-NUMBERING*

Plaintiff, Tonya Davis, lost her home due to the willful neglect of Defendants after they solicited her through selective targeting of the African-American community for their sub-par or illusory foreclosure defense services. When she sued in this Honorable Court to assert her rights, her attorneys were, in turn, sued in a small branch state court in Markham, Illinois, by Ernest Fenton and his law office for alleged conversion, a vague defamatory tort, an unclear interference claim, and, most recently, civil conspiracy. Like a Weeble toy, Mr. Fenton's claims wobble, but he props them up against the best efforts of the state court judge. For example, he recently re-filed a conversion count that was dismissed with prejudice. Similarly, when told his defamation-like count did not come up to muster, he refiled it with a new label, "civil conspiracy." Through the litigation, he obtained a state court order, while the case was actually removed to Federal court, that kept Ms. Davis' attorneys from talking to her, each other, or a broad swath of community organizations for just shy of 16 months. As a result, Ms. Davis had to

1

speak only to a lawyer who was not originally of her choosing who stepped in to assist Ms. Davis' lawyers labor under their bizarre burden. All of this was done to deprive Ms. Davis of the attorneys of her choice in vindicating her fair housing rights, intimidate her from pursuing the same, and punish her for demanding her right to fair treatment in housing matters. Although Ms. Davis and her attorney, Kelli Dudley, are strangers to successful intimidation, the necessity of following a court order interfered with their efforts to vindicate Ms. Davis' fair housing claims.

## INTRODUCTION

1.      Defendant Ernest Fenton (Defendant Fenton) is an attorney admitted to practice in the State of Illinois. Through various advertisements, he holds himself out to defend mortgage foreclosure actions on behalf of consumers like Ms. Davis. Defendant Fenton is the president of the Law Office of Ernest B. Fenton, P.C. (Defendant PC), and Legal Services, Inc. (Legal Services) (both corporate entities collectively with Defendant Fenton, the "Defendants") through which he offered legal services at all times relevant to this complaint.

2.      Ms. Davis hired Defendants to defend her home from foreclosure. Ms. Davis fell behind on mortgage payments, received paperwork indicating her property was subject to foreclosure, and responded to advertising by Defendants.

## PARTIES, JURISDICTION AND VENUE

3.      Ms. Davis resides in the county of Cook, state of Illinois.

4.      Defendant Fenton is licensed to practice law in the state of Illinois, and Defendant PC and Legal Services, Inc. are Illinois domestic corporations. At all times set forth herein, Defendant Fenton was acting as the agent of Defendant PC and Defendant Legal Services.

5.      On or about September 25, 2010, Defendant Fenton held himself out to the public in general, and to Ms. Davis in particular, as a duly licensed attorney with offices, Defendant

2

Law Office of Ernest B. Fenton, P.C., located at 18110 S. Dixie Highway, 1S, Homewood, IL 60430, County of Cook, State of Illinois. Defendant Legal Services, Inc. maintains an address registered with the Illinois Secretary of State at 15943 Sawyer Avenue, Markham, IL 60428. Defendant Fenton has registered as an attorney with an address listed as Law Office of Ernest B. Fenton, 935 W 175th St, 1S, Homewood, IL 60430-3235.

6.     On or about September 25, 2010, Ms. Davis consulted with Defendants in Defendant Fenton's office with regard to a mortgage foreclosure proceeding related to Ms. Davis' property located at 3521 E. 173rd Place, Lansing, Illinois 60438.

7.     At all relevant times, Defendant Fenton perpetrated his conduct below individually and/or by and through his agents, over whom one or more of the Defendants exerted operational control concerning the facts at bar.

8.     This matter involves a Federal statutes, the Fair Housing Act. This is an action for violation of 42 U.S.C. §3617 (Fair Housing Act). This Honorable Court has jurisdiction pursuant to 28 U.S.C. §1331 (Federal question).

9.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391 because each Defendant is an individual or corporation subject to personal jurisdiction this district.

**SUBSTANTIVE ALLEGATIONS**

10.     Ms. Davis is African-American and her race is African-American.

11.     On or about September 25, 2010, Ms. Davis, consulted with Defendant Fenton and Defendants PC and Legal Services, in Defendant Fenton's office, about a mortgage foreclosure proceeding related to Ms. Davis' residential property located at 3521 East 173rd Place, Lansing, Illinois 60438. This was a transaction directly related to Ms. Davis' ownership of

3

and residence in housing. Ms. Davis sought to avoid having her home sold at a judicial auction and having a judicial deed issued divesting her of ownership in her property.

12.     Following a full discussion of the facts and circumstances regarding Ms. Davis' defenses to foreclosure, Ms. Davis was advised by one or more of the Defendants that she had good and complete defenses to the mortgage foreclosure action on the merits.

13.     The scope and representation to be provided by one or more of the Defendants to Ms. Davis was as follows, non-exhaustively, according to the retainer agreement:

>   a.   advise and negotiate resolution with mortgagee forbearance/ work out plan reinstatement deed in lieu
>
>   b.   provide legal representation. assert defenses in Court; redemption with private funding sources open market sale; closed sale; sale-leaseback

14.     On or about September 25, 2010, Defendant PC was retained by Ms. Davis, at which time Defendant requested and received Ms. Davis' signature on a retainer agreement providing for representation set forth above.

15.     As a result of the aforementioned, an attorney-client relationship was created between Ms. Davis and Defendant PC as of September 25, 2010, in which the Defendant PC was to represent Ms. Davis, in a mortgage foreclosure action, case 2008 CH 12032 in the Circuit Court of Cook County, Illinois.

16.     As a result of the aforementioned, Defendant PC and Defendant Fenton owed Ms. Davis the fiduciary duties including, but not limited to, care, loyalty, and disclosure.

17.     As a result of the aforementioned attorney-client relationship, Defendant PC and Defendant Fenton had a duty to represent Plaintiff, Ms. Davis, with the reasonable care, skill, and diligence as ordinarily possessed and exercised by other attorneys in the community.

4

18.     Rather than filing a Motion to Withdraw a previously-filed skeleton answer and a Motion to Vacate a Judgment of Foreclosure and Sale, an interlocutory order in Illinois mortgage foreclosure law, Defendant PC filed its appearance on or about November 1, 2010 and filed nothing else on Ms. Davis' behalf for almost one year.

19.     After being hired, Defendants filed no Answer or other substantive pleadings. An order was entered on an Emergency motion to stay sale on October 4, 2011, staying the sale through November 4, 2011. Defendants subsequently filed another motion to stay sale on November, 2011, which was ordered denied as moot on November 18, 2011, as the bank stayed the sale on its own accord.

20.     Approximately one year after being hired, Defendants presented an Emergency Motion to Stay Sale that was granted for one month. A judgment of foreclosure and sale had already been entered in January 2011.

21.     During the course of Defendants' representation of Plaintiffs, Ms. Davis, Defendant, Ernest Fenton, rendered the following services from September 2010 through November 2011:

      a.   Entered an Appearance on Plaintiff, Ms. Davis', behalf on November 1, 2010;

      b.   Filed an Emergency  Motion to Stay Sale during October 2011;

      c.   Filed a second Emergency Motion to Stay Sale during November 2011 which was denied as moot.

22.     As a direct and proximate cause of Defendant's failure to act on behalf of Ms. Davis, a final judgment, an Order Confirming Sale and Possession, was entered, depriving Ms. Davis of legal title to her home and causing her to face eviction. Her home was sold at a judicial auction and a judicial deed issued transferring title to her home to another party.

5

23.     That at no time during the course of Defendants' representation of Ms. Davis did Defendants inform her in a writing sufficient to apprise her of her options.

24.     Defendants' failure to inform Ms. Davis of one or more of the foregoing alternatives to the or within the litigation was an omission or failure to exercise reasonable care, skill and diligence as ordinarily possessed and exercised by other attorneys in the community.

25.     Defendants' failure to litigate the case or take steps necessary to effectuate a loan modification for Ms. Davis were willful and done to enhance profit from Ms. Davis' fees.

26.     Defendants did not contact the foreclosure Plaintiff's law firm, Codilis & Associates, P.C. in a timely manner to inquire about a workout, loss mitigation, or loan modification.

27.     Defendants did not clearly explain to Ms. Davis the meaning of the entry of the Order Confirming Sale and Possession, namely that she could be evicted from her residence.

28.     At all relevant times, Defendants discriminatorily recruited clientsMs. Davis, , including on the basis of race, namely African-American people, by advertising in that is designed to target African-Americans. In particular, this includes soliciting of referrals from the South Suburban NAACP, Trinity United Church of Christ, and other organizations respected by the African-American community. In addition, Defendant Fenton advertises through a radio show on WVON, a radio station popular in the African-American community.

29.     At all relevant times, Defendants charged a set monthly fee whether any service were rendered or what services were rendered and a late fee if payment was not made on time.

30.     Defendants failed to exercise reasonable care in fulfilling the retainer agreement .

31.     Defendants' refusal to act included, but was not limited to:

        a.   failure to take any action for over a year from the date they were retained;

6

    b.  failure to file a notice of appearance or investigate the file after being retained on September 25, 2010, which failure caused them not to receive notice on October 14, 2010, of the hearing on October 27, 2010, regarding the motion for order approving sale of the property.

    c.  failure to advise as to effect of the order approving sale entered on October 27, 2010, approximately one month after Defendant PC was retained by Ms. Davis.

    d.  Failure to discuss the effect of the motion for order approving report of sale and distribution filed on July 21, 2010, and file an appropriate response;

    e.  Failure to advise as to sale scheduled for August 16, 2010, and take an appropriate response;

    f.  Failure to file appropriate pleadings to respond to the Motion Seeking Approval of Order for Sale filed by January 5, 2011, resulting in the entry of a judgment on the motion seeking approval of order for sale on January 19, 2011.

32.    As a direct and proximate result of the Defendant PC's, Defendant Legal Services', and Defendant Fenton's breach of duty to Ms. Davis, she sustained and incurred monetary damages and loss as follows:

    a.  loss of equity in her home which could have been saved by following one or more of the alternatives to litigation set forth above;

    b.  loss of ownership of her residential home;

    c.  attorney fees and late fees paid for months in where no services were rendered; and

7

    d.   attorney fees and late fees paid in months where services were rendered but were incompetent.

That the aforementioned monetary damages and loss would not have been sustained by the Ms. Davis, but for the Defendant PC's, Defendant Legal Services', and Defendant Fenton's failure to represent her.

33.    That the damages sustained by Ms. Davis were proximately caused by the Defendant PC's, Defendant Legal Services', and Defendant Fenton's, breach of duty as herein before set forth in detail without any negligence contributing thereto on the part of Ms. Davis.

34.    Because of the above facts, Ms. Davis sued Defendants for violation of the Fair Housing Act.

35.    The Fair Housing Act, 42 U.S.C. §3601 *et seq.*, was first enacted in 1968 to prohibit discrimination in connection with real estate transactions, including home purchases and refinancing. The Act has been broadly construed by the courts to make effective its provisions to protect consumers. The Act includes race as a basis for illegal discrimination.

36.    Under 42 U.S.C. 3604(b), it is illegal to discriminate in services related to sales or rentals of dwellings. This is broadly construed to include services like mortgage loans and homeowners insurance. Under the same section, race is one of the protected classes. Under 42 U.S.C. 3604(c), it is illegal to:

> To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

37.    Further, 42 U.S.C. 3605 prohibits discrimination by persons or other entities

8

whose business includes engaging in residential real estate-related transactions.

38.    Defendant PC, Defendant Legal Services, and Defendant Fenton targeted Ms. Davis for inferior, substandard services because of her race, African-American. They relied on her race to induce trust and to prevent her from ascertaining the services were inferior, incompetent, and even non-existent.

39.    Defendants invidiously told Ms. Davis they were representing her in Court when, in fact, they were not filing any pleadings reasonably calculated to save her home, and they relied upon her trusting them based on their invidious targeting of the African-American population to prevent her from finding out they were not representing her.

40.    In addition or in the alternative, Defendants engage in advertising in that is designed to target African-Americans. In particular, this includes soliciting of referrals from the South Suburban NAACP, Trinity United Church of Christ, and other organizations respected by the African-American community. In addition, Defendant Fenton advertises through a radio show on WVON, a radio station popular in the African-American community. By the actions described above, Defendants have violated 42 U.S.C. §§3601, 3604, and 3605.

41.    Ms. Davis was a defendant in a foreclosure lawsuit where a competent attorney would have filed a Motion to Vacate, filed an Answer or other pleading, issued discovery, timely investigated personal jurisdiction, and taken other actions. A competent attorney would have referred Ms. Davis to a HUD-Certified Housing Counseling Agency for free help with a loan modification application. Instead of referring Ms. Davis to a HUD-Certified Housing Counseling Agency, Defendants charged her for bumbling and incompetent, at best, attempts to obtain a modification in November, 2011, approximately nine months after an Order Approving Report of Sale and Distribution, Confirming Sale and Order of Possession was entered on January 19,

2011. Ms. Davis was entitled to participate in the defense of her case with a competent attorney and similarly-situated foreclosure defendants whose race is white and who receive these services.

42.     Ms. Davis fell prey to Defendants because of his advertising targeting people whose race is African-American.

43.     Defendants' discriminatory actions, as set forth above, have caused Ms. Davis to lose title to her residential home.

44.     Treating Ms. Davis differently in mortgage lending and loan modification decisions based on her race violates the Fair Housing Act.

### CAUSE OF ACTION: VIOLATION ON THE FAIR HOUSING ACT'S PROHIBITION ON RETALIATION, INTIMIDATION, AND INTERFERENCE, 42 U.S.C. §3617

45.     Ms. Davis incorporates each and every preceding paragraph stated above, inclusively, as though the same were fully set forth above herein.

46.     On July 3, 2013 Defendant Ernest Fenton and the Law Office of Ernest Fenton filed a complaint in the Circuit Court of Cook County, Illinois styled *Law Office of Ernest Fenton and Ernest Fenton v. Kelli Dudley, the Law Office of Kelli Dudley, Andrew Sidea and the Law Office of Andrew Sidea,* Case No. 2013-L-066047.  They persist in this lawsuit, now twice dismissed, to this day. They have re-filed a count, conversion, dismissed by the state court judge with prejudice and have otherwise acted in flagrant disregard of the law, even in the state court they hand-picked in a flagrant attempt at venue shopping.

47.     The claims asserted in the State Court case against Ms. Davis' counsel in the present case are slander, conversion and tortious interference with Mr. Fenton and his law practice.

48.     The factual predicate asserted in the State case for the above tort claims are the

Plaintiff's counsel "…are working in concert…to harm [the Law Office of Ernest Fenton and Ernest Fenton] and that Plaintiff's counsel "….have told others in the community who may seek the services of LOEBF or inquire about services offered the [Fenton and his law office] do not provide adequate services to clients and target African Americans based on national origin..[and] that Defendants conspired to advance Mrs. Dudley's law practice by filing suits in federal court without regard [sic] of the substantive value of same…."

49.   On July 17, 2013 the Circuit Court of Cook County—Sixth District  entered a Temporary Restraining Order which prevented Plaintiff's counsel from talking to her and from engaging in certain activities necessary for the preparation of the present Federal court action.

50.   The terms of the order prohibit Ms. Davis' counsel from talking to former employees of the Fenton office  (including Ms. Davis' attorney Andrew Sidea) and other key witnesses in preparation of the present case.

51.   The Order of July 17, 2013 was issued after the Cook County Circuit court case was removed to Federal court on July 14, 2013.   Notice of Filing of Removal.

52.   The obtaining of the July 17, 2013 order by Fenton and his Law Office, the Defendants herein, disabled Ms. Davis' counsel in pursuing the instant action and Ms. Davis has had to retain another attorney, Robert Newman.

53.   The actions of the Defendants herein have violated Ms. Davis' rights under 42 U.S.C. § 1367 which provides, in part, that "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of….any right granted or protected…." under the Fair Housing Act.

54.   Defendants' action in filing the above State Court action and obtaining the State Court injunction interfered with Ms. Davis' efforts in seeking redress in the Court for her rights

11

under the Fair Housing Act, retaliated against her for her attempts to do the same, and were an attempt to intimidate her, all in violation of the Fair Housing Act's prohibition on intimidation, retaliation, and interference, 42 U.S.C. § 3617.

55.     Even if Ms. Davis' Fair Housing Act claim would have been unsuccessful, Defendants' actions to intimidate her, interfere with her efforts to assert her rights, and retaliate against her for asserting her rights are prohibited by 42 U.S.C. § 3617.

WHEREFORE, Plaintiff Tonya Davis, demands judgment against Defendants for:

a.     Compensatory and actual damages to be determined at trial;

b.     Punitive damages;

c.     Attorneys' fees and costs.

Respectfully submitted,

/s/ Kelli Dudley

Kelli Dudley
**Attorney for Plaintiff Tonya Davis**

Kelli Dudley, Law Office of Kelli Dudley
1658 Milwaukee, #100-8377
Chicago, Illinois  60647
312-771-9770
attorneykelli@sbcglobal.net