UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TONYA DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 13 C 3224 |
| v. ) | |
| ) | Chief Judge Rubén Castillo |
| ERNEST FENTON, LAW OFFICE OF ) | |
| ERNEST B. FENTON, P.C., and LEGAL ) | |
| SERVICES, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Tonya Davis ("Plaintiff") brings this action against Ernest Fenton ("Fenton"), the Law Office of Ernest B. Fenton, P.C., and Legal Services, Inc. ("Defendants"), alleging that they retaliated against her for exercising her rights under the Fair Housing Act ("FHA"), 42 U.S.C. § 3617. Presently before the Court is Defendants' motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 76.) For the reasons set forth below, Defendants' motion is granted.[1]

## BACKGROUND

This case has developed a complicated history since it was first filed on April 30, 2013, (R. 1, Compl.), spreading across at least three distinct actions and stretching from Illinois state court to the U.S. Court of Appeals for the Seventh Circuit. The underlying facts, however, are

---

[1] Plaintiff accurately observes that Defendants failed to comply with this Court's standing order by serving the opposing party with a letter summarizing the legal and factual grounds for their motion. (R. 81, Pl.'s Resp. at 1.) In the interest of judicial efficiency, the Court has elected to decide this motion on its merits rather than dismiss it without prejudice for failing to comply with the standing order. Defendants are nonetheless strongly admonished to review and follow this Court's rules in any future filings.

simple. Plaintiff retained Defendants in 2010 to represent her in a home foreclosure proceeding.[2] *Fenton v. Dudley*, 761 F.3d 770, 771 (7th Cir. 2014). Despite paying Defendants thousands of dollars for legal services, Plaintiff alleges that they in fact did virtually nothing to help her keep her home. *Id.* She filed the present action in 2013, claiming that Defendants had violated several state laws with their inadequate representation and that they had also violated the FHA, 42 U.S.C. § 3601 *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1982, by targeting her for inferior service based on her race. (R. 1, Compl.)

On July 3, 2013, Defendants Fenton and the Law Office filed a lawsuit in state court against Plaintiff's lawyers, Kelli Dudley ("Dudley") and Andrew Sidea ("Sidea"). *Fenton*, 761 F.3d at 772. Defendants alleged that Dudley and Sidea had improperly acquired confidential information about Fenton's clients and had intentionally spread lies about him to his clients and peers. *Id.* Claiming conversion, tortious interference with a business relationship, and defamation, Defendants sought damages and an injunction. *Id.* On July 17, 2013, three days after Dudley and Sidea filed a notice of removal to federal court, the Cook County Circuit Court entered an ex parte preliminary injunction against them, forbidding them from contacting any current or former clients or employees of Defendants. *Id.* As the Seventh Circuit noted regarding that case, "Read literally, the injunction would prevent Dudley and Sidea from speaking to their client, since Davis is Fenton's former client; to any other of Fenton's clients, in order to substantiate Davis's claim; and even to each other, since Sidea was briefly Fenton's employee." *Id.* at 773. Dudley and Sidea claimed that the result of the injunction was "a complete inability to

---

[2] Precisely which Defendants Plaintiff retained has been a disputed fact throughout this case; the engagement letter Plaintiff signed, by its terms, only retained the Law Office of Ernest B. Fenton, P.C., and portrayed any other associated entity, including Defendant Fenton himself, as merely an agent of the firm. (R. 17-1, Engagement Letter.) Defendants have alleged that "Legal Services, Inc. does not provide any legal services to anyone" and "is a company established to collect attorney fees." (R. 76-1, Def.'s Mem. at 4.) Because this dispute need not be resolved to dispose of the present motion, the Court puts this issue aside.

2

prosecute Davis's claim." *Id.* U.S. District Judge Rebecca Pallmeyer concluded on January 3, 2014, that the case should be remanded to state court, *Fenton v. Dudley*, No. 13 C 5019, 2014 WL 144676, at *8 (N.D. Ill. Jan. 3, 2013); the Seventh Circuit affirmed on August 1, 2014, *Fenton*, 761 F.3d 770. After remand, Plaintiff alleges that the injunction was lifted. (R. 81, Pl.'s Resp. at 2.)

      While the suit against Plaintiff's counsel wound its way through state and federal court, the present case continued to proceed. On July 3, 2013, Defendants filed a motion to stay the proceedings and refer Plaintiff's claims to arbitration, as her contract with Defendants provided that any disputes "regarding any provision in this agreement, or the outcome of the matter for which [Plaintiff] retained [Defendants]" were subject to binding arbitration. *Davis v. Fenton*, 26 F. Supp. 3d 727, 734 (N.D. Ill. 2014). Meanwhile, Plaintiff filed a motion requesting leave to amend her complaint, seeking to add a claim that Defendants had violated Section 3617 of the FHA by retaliating based on her exercise of FHA rights with their lawsuit against her counsel in the aforementioned state case. (R. 27, Mot. for Leave to Amend.) On February 7, 2014, this Court found that all of Plaintiff's claims—including her FHA claims of discrimination—fell under the arbitration agreement because they "turn[ed] on the retention of Defendants to provide her with legal assistance." *Davis*, 26 F. Supp. 3d at 742. In the same order, this Court denied Plaintiff's motion to amend, finding that "the proposed amended complaint would not change the outcome of this decision." *Id.* at 745. The Court dismissed this action without prejudice subject to full reinstatement upon the completion of arbitration. (R. 37, Minute Order.)

      Plaintiff's statement of claims before the arbitrator primarily repeated the assertions and claims in her federal complaint, but it also added a claim for retaliation under Section 3617. (R. 81-5 at 12-14.) The arbitrator issued an award on February 3, 2015, finding in Plaintiff's favor

on the attorney malpractice count and denying all of her other claims. (R. 81-2, Award of Arbitrator.) Defendants subsequently challenged the amount of the award, and on March 25, 2015, the arbitrator issued a modified award with reduced damages. (R. 81-3, Modified Arbitration Award.) With regard to Plaintiff's Section 3617 claim, both awards noted under "Scope of Arbitration and Issues Decided" that the Section 3617 claim "was 'withdrawn without prejudice' by [Plaintiff] prior to the commencement of the arbitration." (R. 81-2, Award of Arbitrator at 1; R. 81-3, Modified Arbitration Award at 1.) Accordingly, "[n]either [the Section 3617 claim], nor the issue of whether [the Section 3617 claim] could be withdrawn without prejudice was decided by this arbitrator." (R. 81-2, Award of Arbitrator at 1; R. 81-3, Modified Arbitration Award at 1.) However, in both awards, the arbitrator wrote under "Ruling" that the Section 3617 claim was "denied in its entirety." (R. 81-2, Award of Arbitrator at 3; R. 81-3, Modified Arbitration Award at 3.)

On July 17, 2015, Plaintiffs filed a motion in this Court to enforce the arbitration award and to reinstate the case with an amended complaint alleging only retaliation under Section 3617.[3] (R. 60, Pl.'s Mot. to Reinstate.) When Defendants failed to appear and oppose the motion, the Court granted it.[4] (R. 62, Minute Entry.) Defendants filed the instant motion to dismiss the

---

[3] On December 22, 2015, Dudley also filed a parallel action in her own name against Defendant Fenton and his law office, as well as several associated attorneys, before U.S. District Judge James B. Zagel. Complaint, *Dudley v. Fenton*, No. 15 CV 11555 (N.D. Ill. filed Dec. 22, 2015). Dudley argues in that case that, by proceeding against her in their July 2013 state court lawsuit, the defendants interfered with Dudley's efforts to vindicate Plaintiff's FHA rights. *Id.* at 1. Dudley's independent action remains pending.

[4] Defendants subsequently filed a motion to vacate the default judgment, to dismiss Plaintiff's reinstated claim with prejudice, and to impose sanctions on Plaintiff's counsel, (R. 64), which this Court denied in open court, (R. 72, Minute Order). The Court also denied Defendants' subsequent motion for reconsideration. (R. 79, Minute Order.) On November 12, 2015, Defendants filed a notice of appeal to the Seventh Circuit regarding these issues. (R. 84, Notice of Appeal.) The Seventh Circuit has recently dismissed the appeal in its entirety for lack of jurisdiction. *See Davis v. Fenton*, No. 15-3629 (7th Cir. Apr. 6, 2016).

amended complaint on October 5, 2015, (R. 76, Def.'s Mot. to Dismiss), and it has now been fully briefed, (R. 81, Pl.'s Resp.; R. 82, Def.'s Reply).

## LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Kubiak v. City of Chi.*, 810 F.3d 476, 480-81 (7th Cir. 2016). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citation omitted).

In deciding a Rule 12(b)(6) motion, the Court may consider the complaint itself, "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citation omitted). Courts may take judicial notice of related court proceedings outside the pleadings without converting the motion to dismiss into a motion for summary judgment. *See Quincy Mall, Inc. v. Parisian, Inc.*, 27 F. App'x 631, 636 (7th Cir. 2011) ("In reviewing a motion to dismiss, we may look to matters of public record outside of the pleadings, including . . . public court documents[.]").

**ANALYSIS**

I. **Subject-Matter Jurisdiction**

Defendants first argue that this Court lacks jurisdiction over the amended complaint. (R. 76-1, Def.'s Mem. at 2-3.) Noting that Plaintiff's allegation of subject-matter jurisdiction relied on the existence of claims under the FHA, Defendants argue that the FHA claims were "conclusively determined by the Arbitrator" to be "devoid of merit" and that they were "ruled to not exist." (*Id.* at 3.)

Defendants are correct to observe that a federal court has no authority to decide a case unless it is satisfied that it has subject-matter jurisdiction. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."). However, Defendants' argument is based on several misunderstandings. First, it must be noted that Plaintiff has, throughout the history of this litigation, raised multiple distinct FHA claims. Although Defendants refer simply to "the Fair Housing Act claim," (R. 76-1, Def.'s Mem. at 3), Plaintiff raised three FHA claims—under Sections 3604(b), 3604(c), and 3605—in her original complaint. (R. 1, Compl. ¶¶ 36-48.) These claims were decided by the arbitrator in Defendants' favor and are not at issue here, although the Court would note that they were simply denied without any substantial discussion rather than being "conclusively determined" to be "devoid of merit." (R. 81-3, Modified Arbitration Award at 2.)

In the amended complaint that was filed after the arbitration award, Plaintiff raises a different FHA claim under Section 3617, alleging that Defendants engaged in retaliatory conduct designed to interfere with Plaintiff's exercise of her FHA rights. (R. 63, Am. Compl.) Plaintiff did raise her Section 3617 claim at arbitration, and the arbitration award does at one point state

that this claim was "denied in its entirety." (R. 81-3, Modified Arbitration Award at 3.) However, the arbitrator made a prominent note at the outset of the award that Plaintiff had withdrawn this claim "prior to the commencement of the arbitration," and he clearly stated that "[n]either [the Section 3617 claim], nor the issue of whether [the Section 3617 claim] could be withdrawn without prejudice was decided by this arbitrator." (*Id.* at 1.) In light of the arbitrator's clear explanation that he did not even consider Plaintiff's Section 3617 claim, the Court concludes that his later statement that this claim was denied was a scrivener's error.[5] *See United Steel, Paper & Forestry, Rubber Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. PPG Indus., Inc.*, 751 F.3d 580, 585 (7th Cir. 2014) ("[A] court should, if possible, resolve apparent ambiguities [in the arbitrator's decision] by examining the arbitrator's opinion and the record.").

Even if the arbitrator had denied the Section 3617 claim, this fact would not establish grounds to dismiss the amended complaint for lack of subject-matter jurisdiction. Despite Defendants' statement, a claim that has been denied elsewhere is not "ruled not to exist." (R. 76-1, Def,'s Mem. at 3.) It may be appropriate for later determination, either because it was dismissed below, or because it demonstrates an inability to sufficiently plead the claim, or because it is a claim that is doomed to fail on its merits. However, these are all merits determinations; the fact that jurisdiction exists because a claim arises under federal law is established before the Court may consider the strength or viability of that claim. *Steel Co. v.*

---

[5] Of the six counts raised by Plaintiff that the award of arbitration mentioned, the arbitrator only explained in detail his finding on attorney malpractice, which he granted in Plaintiff's favor. (R. 81-3, Modified Arbitration Award at 2-3.) He also explained that he was denying the breach of contract count because Plaintiff failed to perform by not making payments. (*Id.* at 3.) For the remaining four counts, the arbitrator simply indicated that "[f]or the reasons set forth on the record, [this] Count [] is denied in its entirety." This sparse and boilerplate language, at odds with the arbitrator's detailed discussion about the Section 3617 claim earlier, is insufficient to establish that this claim was "ruled not to exist" as Defendants contend.

7

*Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." (alteration, citation, and internal quotation marks omitted)). Because Plaintiff alleges a violation of Section 3617, a federal statute, the Court finds that arising-under jurisdiction has been appropriately invoked. *See United States v. Krilich*, 209 F.3d 968, 973 (7th Cir. 2000) (finding subject matter jurisdiction where the suit charged "a violation of a federal statute which is within the federal courts' federal question jurisdiction"). Defendants may look elsewhere to try to establish that this claim fails on the merits, but Defendants fail to establish that this claim does not belong before this Court as a jurisdictional matter.

## II. Res Judicata

Defendants also argue that Plaintiff's Section 3617 claim is barred by res judicata, as the arbitration award stated that it was denied. (R. 76-1, Def.'s Mem. at 3-4.) "The three requirements for *res judicata* under federal law are: (1) an identity of the parties or their privies; (2) an identity of the causes of actions; and (3) a final judgment on the merits." *Cent. States, Se. & Sw. Areas Pension Fund v. Hunt Truck Lines, Inc.*, 296 F.3d 624, 628 (7th Cir. 2002). As explained above, however, Plaintiff's Section 3617 claim was not decided on the merits at arbitration. Instead, the arbitrator stated that neither the claim nor whether it could be withdrawn without prejudice was decided in that proceeding. (R. 81-3, Modified Arbitration Award at 1.) Put simply, without a final judgment on the merits, there can be no preclusive effect under res judicata, and thus Defendants' argument fails.

### III. Section 3617

Defendants also argue that the FHA does not apply to the provision of legal services and that, regardless, Plaintiff has not sufficiently pled her Section 3617 claim. (R. 76-1, Def.'s Mem. at 4-9.) The Court will address these two parts in turn.

#### A. Section 3617's Application to Providers of Legal Services

Defendants do not directly argue that Section 3617 does not apply to providers of legal services in the instant motion to dismiss.[6] However, as Defendants style one section of their motion as an argument that "The Fair Housing Act And Prohibition Against Retaliation Are Not Applicable To The Provision Of Legal Services," (R. 76-1, Def.'s Mem. at 5), the Court will for the sake of completeness address whether Section 3617 applies to providers of legal services.

As discussed in more detail in the Court's previous opinion, many sections of the FHA apply only to certain kinds of parties or situations. *Davis*, 26 F. Supp. 3d at 741-42. Section 3604(c), for instance, applies "only to situations involving defendants who were engaged in the sale or rental of a dwelling." *Id.* at 741. Even more restrictively, courts in this District have held that Section 3605 "applies only to transactions involving defendants that are lenders, brokers, or appraisers of mortgage loans." *Id.* Section 3604(b), meanwhile, has been interpreted broadly by the Seventh Circuit as covering discriminatory provision of services relating to securing housing,

---

[6] Instead, Defendants devote two pages out of their nine-page motion to arguing that Sections 3604(c) and 3605 of the FHA do not apply to the provision of legal services, and the following three pages to a recitation of alleged facts without any accompanying argument. (R. 76-1, Def.'s Mem. at 4-5, 6-8.) The Court agrees with Defendants' assessment regarding Sections 3604(c) and 3605, and in fact previously discussed the applicability of these sections to Plaintiff's claims in its previous order to stay litigation in this case pending arbitration. *Davis*, 26 F. Supp. 3d at 740-42. Defendants do not mention Section 3604(b), one of the causes of action pursued by Plaintiff at that point in this case, which this Court held may be "broad enough to include discriminatory legal assistance in a mortgage foreclosure." *Id.* at 742. Regardless, the Court observes that these causes of action are no longer at issue in this case as they were referred to arbitration, they were decided on the merits there, and they were not raised in Plaintiff's amended complaint.

9

seemingly without limitation on the party providing those services. *See NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 299-300 (7th Cir. 1992); *Davis*, 26 F. Supp. 3d at 741-42.

Section 3617, in turn, makes it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected" by the FHA. 42 U.S.C. § 3617. Unlike the aforementioned Sections 3604(c) and 3605, Section 3617 contains no language limiting those persons or situations to which it applies. Indeed, the Seventh Circuit has held that, to succeed on a Section 3617 claim for interference, a plaintiff must only show that "(1) she is a protected individual under the FHA, (2) she was engaged in the exercise or enjoyment of her fair housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of her protected activity under the FHA, and (4) the defendants were motivated by an intent to discriminate." *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009). These requirements do not contain any factors relying on the defendant's identity or role, and instead they center on his intimidating action and intent. Accordingly, the Seventh Circuit has found that Section 3617 applies to a wide variety of potential defendants. *See Bloch*, 587 F.3d 771 (condominium association); *Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327 (7th Cir. 2004) (neighbors and homeowner's association); *see also Whisby-Myers v. Kiekenapp*, 293 F. Supp. 2d 845, 852 (N.D. Ill. 2003) ("Illustrative cases [under Section 3617] have involved acts such as cross-burning, firebombing homes or cars, shooting shotguns, physical assaults, or throwing Molotov cocktails.").

As Plaintiff aptly points out, at least one case in this District has considered the applicability of Section 3617 to attorneys. In *Novak v. Levenfeld Pearlstein*, No. 13 C 08861,

2014 WL 4555581 (N.D. Ill. Sept. 15, 2014), U.S. District Judge Edmond E. Chang found that Section 3617 does not reach a law firm "either imparting the position of its client or making a representation on its client's behalf." *Id.* at *6. Because these actions were taken merely in "carrying out its legal representation of" its client, the law firm was not itself responsible for any alleged Section 3617 violation. *Id.*; *see also Zhu v. Fisher, Cavanaugh, Smith & Lemon, P.A.*, 151 F. Supp. 2d 1254, 1259 (D. Kan. 2001) ("Mere legal representation of a third party who allegedly violated plaintiff's fair housing rights . . . does not give rise to an actionable claim[.]"). However, the *Novak* court was careful to clarify that "this holding does *not* suggest that there is no circumstance in which an attorney representing a defendant in a discrimination suit might independently violate Section 3617." *Novak*, 2014 WL 4555581, at *7.[7]

Although *Novak* concerns those who provided legal services to another, and not to the victim of the discrimination, its broader lesson is clear: individuals are liable for interference or retaliation under Section 3617 when their actions are their own, rather than properly imputed to another. Simply put, Defendants' status as a provider of legal services does not act as a talisman to ward off Section 3617 liability. Neither the statute itself nor this Circuit's case law suggest that Section 3617 is inapplicable to this case because Defendants once provided legal services to Plaintiff.

---

[7] Plaintiff also cites to *Uriarte v. Koch*, 13 CV 2923 (N.D. Ill. Feb. 5, 2014), and *Frederick v. Select Portfolio Servicing, Inc.*, No. 07 CV 7044, 2009 WL 230597 (N.D. Ill. Jan. 30, 2009), as evidence that attorneys may be liable under the FHA for actions taken in foreclosure cases. (R. 81, Pl.'s Resp. at 12.) These cases are not on point. *Uriarte* dealt only with application of the FHA to attorneys generally without any specific consideration of Section 3617. Further, after considering whether the reach of the FHA might exclude attorneys, the court simply denied the motion to dismiss after finding that "such arguments are improper on a motion to dismiss and are more appropriately brought later in a motion for summary judgment." *Id.* at 3. In *Frederick*, meanwhile, neither the parties nor the court discussed whether the FHA applies to attorneys, and the court merely denied the motion to dismiss after finding that the plaintiffs had satisfied federal notice-pleading standards. *Frederick*, 2009 WL 230597, at *5. Neither case substantively addresses whether Section 3617 applies to attorneys, and thus neither sheds any light on the present case.

11

**B.     Sufficiency of the Complaint**

Defendants argue that because "the [state court] petition was not filed against Tonya Davis . . . it could not logically be construed to be a retaliation against her." (R. 76-1, Def.'s Mem. at 6.) Defendants also contend that Plaintiff "ha[s] yet to allege any facts which demonstrate that the defendants[], being motivated by an intent to discriminate, coerced, threatened, intimidated, or interfered with . . . Tonya Davis . . . on account of her protected activity under 42 U.S.C. § 3617." (R. 82, Def.'s Reply at 2-3.) Plaintiff responds by asserting that "Ms. Davis has pled facts showing invidiously motivated harassment." (R. 81, Pl.'s Resp.) Ultimately, Plaintiff has not pled enough to state a claim under Section 3617.

Section 3617 forbids, among other things, "interfer[ing] with any person in the exercise or enjoyment of, or on account of [her] having exercised or enjoyed, . . . any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. Read alone, the wording of Section 3617 suggests that it would not protect interference with or retaliation for the legal vindication of FHA rights; the right to bring suit against violators of Sections 3603-3606 resides in 42 U.S.C. § 3613. Section 3617 appears on its face to be concerned primarily with actions like refusing to sell a property or provide a mortgage on the basis of protected characteristics. In *Bloch*, however, the Seventh Circuit held that Section 3617 reaches conduct that is not directly prohibited by these underlying FHA rights. *Bloch*, 587 F.3d at 782 ("Coercion, intimidation, threats, or interference with or on account of a person's exercise of his or her §§ 3603-3606 rights can be distinct from outright violations of §§ 3603-3606.").

Further, the Department of Housing and Urban Development ("HUD"), which administers the FHA, has promulgated a regulation interpreting Section 3617 in a manner that

"cuts section 3617 loose from" underlying FHA claims.[8] *Halprin*, 388 F.3d at 330; *see also* 24 C.F.R. § 100.400. Most significantly for this case, the HUD regulation indicates that "[c]onduct made unlawful under [Section 3617] includes, but is not limited to, the following: . . . (5) Retaliating against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act." 24 C.F.R. 100.400(c). This regulation reflects that, in HUD's view, the pursuit of Section 3603-3606 rights in court qualifies as the enjoyment or exercise of those rights. Although the Seventh Circuit has questioned the breadth of HUD's regulation, it has observed that "we still must give HUD's interpretations of the FHA 'great weight.'" *Bloch*, 587 F.3d at 782 (quoting *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 210 (1972)). In light of HUD's regulation and the Seventh Circuit's repeated deference to it, this Court finds that, for the purposes of Section 3617, "exercise or enjoyment of" FHA rights properly includes suing to enforce those rights. *See Krieman v. Crystal Lake Apartments Ltd. P'ship*, No. 05 C 0348, 2006 WL 1519320, at *9 (N.D. Ill. May 31, 2006) (finding that filing a complaint with HUD under FHA establishes that "Plaintiffs were exercising their fair housing rights"); *Marks v. BLDG Management Co., Inc.*, No. 99 CIV. 5733(THK), 2002 WL 764473, at *10 (S.D.N.Y. Apr. 26, 2002) ("Plaintiff's filing of a lawsuit under the FHA constitutes 'protected activity.'").

Despite this finding, Plaintiff has failed to adequately state a claim for interference under Section 3617. As recounted above, Plaintiff must allege that "(1) she is a protected individual under the FHA, (2) she was engaged in the exercise or enjoyment of her fair housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of her protected activity under the FHA, and (4) the defendants were motivated by an intent to

---

[8] Although the Seventh Circuit commented that "[t]he regulation may stray too far from section 3617," it also followed the regulation and noted that the Eleventh Circuit Court of Appeals had upheld its validity. *Halprin*, 388 F.3d at 330.

discriminate." *Bloch*, 587 F.3d at 783. As an African-American woman, Plaintiff clearly meets the first element. (R. 63, Am. Compl. ¶ 10.) By filing her original lawsuit against Defendants raising several FHA claims, she also meets the second element. *See Marks*, 2002 WL 764473, at *10 (finding that previously filed FHA lawsuit constitutes "a sufficient predicate upon which Plaintiff's retaliation claim may be based" even if the plaintiff failed to establish a violation of FHA rights in that initial lawsuit). However, Plaintiff fails to sufficiently allege the third and fourth elements.

Although Plaintiff claims that Defendants' conduct in their state-court action against Plaintiff's attorney constituted interference with and on account of her pursuit of FHA rights, the Court declines to extend the FHA to such extreme limits. In short, Plaintiff alleges that Defendants filed the state-court action in an attempt to intimidate her. (R. 63, Am. Compl. ¶ 54.) Most significantly, she claims that Defendants discriminatorily interfered with her attempt to vindicate her FHA rights at an earlier stage in this action, by seeking and obtaining an injunction against her attorney that "prevented Plaintiff's counsel from talking to her," (*id.* ¶ 49), and "prohibit[ed] Ms. Davis' counsel from talking to former employees of the Fenton office (including Ms. Davis' attorney Andrew Sidea) and other key witnesses in preparation of the present case," (*id.* ¶ 50).

However, the Court finds that the valid pursuit of legal rights in a court of law, even if it causes some inconvenience to an FHA litigant, does not constitute interference under Section 3617. While the Court is generally sympathetic to broad interpretations of the FHA, Plaintiff's theory stands on the edge of a slippery slope. By Plaintiff's capacious reading of the FHA as prohibiting any actions that could complicate an FHA suit, a defendant could be liable under Section 3617 even for filing a counterclaim or mounting a vigorous defense. The FHA was

intended to prevent and punish discriminatory housing practices, *Halprin*, 388 F.3d at 329, but this Court is unconvinced that it was intended to preemptively strip those accused of FHA violations of the right to vindicate their own legal rights.

Plaintiff focuses in particular on Defendants' conduct in seeking and obtaining an injunction in state court, alleging that the imposition of this injunction prejudiced her in earlier stages of this case. However, even granting this as true, it cannot establish that Defendants violated a federal statute; instead, it is simply the inevitable result of a legal system constructed to adjudicate the varying, sometimes conflicting, interests of multiple parties. The Seventh Circuit held that Defendants' action was properly brought in state court, *Fenton*, 761 F.3d at 778-79, and, while this Court shares the Seventh Circuit's concern that the state court issued an injunction after the filing of a notice of removal, the Court cannot adjudicate the merits of a proper state-court proceeding. *See Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Sides v. City of Champaign*, 496 F.3d 820, 824 (7th Cir. 2007) (under *Rooker-Feldman* doctrine, lower federal courts cannot reconsider state-court decisions because "only the Supreme Court of the United States may set aside a judgment entered by a state court").

The Court has not located, nor have Plaintiffs referenced, any cases recognizing a Section 3617 cause of action for seeking legal redress despite the existence of a putative FHA claim. Instead, most litigation based on Section 3617 centers on direct, extralegal acts of interference or retaliation for the exercise of FHA rights. *See, e.g., Bloch*, 587 F.3d at 783 (repeatedly tearing down mezuzot); *Whisby-Myers v. Kiekenapp*, 293 F. Supp. 2d 845, 852 (N.D. Ill. 2003) ("Illustrative cases have involved acts such as cross-burning, firebombing homes or cars, shooting shotguns, physical assaults, or throwing Molotov cocktails."); *see also, e.g., Mich. Prot.*

& *Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 348 (6th Cir. 1994) (disrupting FHA rights "by economic competition" not sufficient to invoke Section 3617); *Wood v. Briarwinds Condominium Ass'n Bd. of Dirs.*, 369 F. App'x 1, 3 (11th Cir. 2010) (enforcement of community rules "does not rise to the level of intimidation or threats"). While this Court does not foreclose the possibility that indirect retaliatory acts could fall under Section 3617 in the right circumstances, the Court will not extend Section 3617 so far as to find a violation where a defendant obtained relief through a duly issued court order. The Court trusts that the legal system can reach just outcomes without granting FHA plaintiffs a monopoly on access to the courts. Thus, the Court finds that Plaintiff has failed to meet the third element.

Finally, the Court finds that Plaintiff has not sufficiently pled discriminatory intent. Evidence of such intent would be necessary at the summary judgment stage, but at the pleading stage all that is required is that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Here, Plaintiff has alleged that Defendants discriminatorily recruited African-Americans as clients in order to provide substandard legal services related to foreclosures. (R. 63, Am. Compl. ¶¶ 38-40.) Because of this alleged race-based discrimination in the provision of housing-related services, Plaintiff previously pursued claims against Defendants for violations of the FHA. However, the Section 3604 and 3605 claims have since fallen out of the case, and Plaintiff never alleges in the amended complaint that Defendants' allegedly retaliatory lawsuit, the conduct currently at issue, was motivated by an intent to discriminate. Instead, the amended complaint focuses entirely on the *effects* of the suit with no mention of its *purpose*. (*See, e.g.*, R.

16

63, Am. Compl. ¶ 54 ("Defendants' action in filing the above State Court action and obtaining the State Court injunction interfered with Ms. Davis' efforts in seeking redress in the Court for her rights under the Fair Housing Act, retaliated against her for her attempts to do the same, and were an attempt to intimidate her[.]").) Although Plaintiff was only required to plead facts that "plausibly allege discriminatory intent," *Sheikh v. Rabin*, 565 F. App'x 512, 518 (7th Cir. 2014), she failed to include *any* allegations that "raise[] at least a minimal inference that Defendants acted with a discriminatory motive." *Stevens v. Hollywood Towers & Condo. Assoc.*, 836 F. Supp. 2d 800, 811 (N.D. Ill. 2011). Though Plaintiff has alleged discriminatory motivations for Defendants' conduct in her previous FHA claims, these claims were denied at arbitration and are not at issue here. Previous discrimination does not suffice to state a claim for retaliation under Section 3617; the retaliatory conduct itself must be motivated by a discriminatory intent. *Bloch*, 587 F.3d at 783; *Echemendia v. Gene B. Glick Mgmt. Corp.*, 199 F. App'x 544, 547 (7th Cir. 2006) ("To prevail on a claim of retaliation under § 3617 of the FHA, [the plaintiff] must show *both* a retaliatory motive and [the defendant's] intent to discriminate on a forbidden ground[.]"); *East-Miller v. Lake Cty. Highway Dep't*, 421 F.3d 558, 563 (7th Cir. 2005) ("[A] showing of intentional discrimination is an essential element of a § 3617 claim."); *Sofarelli v. Pinellas Cty.*, 931 F.2d 718, 722 (11th Cir. 1991) (requiring plaintiffs to show "that race played some role" in the defendants' actions that allegedly violated § 3617). Because Plaintiff has not made any allegations from which it can be plausibly inferred that Defendants' state-court lawsuit against her attorney was motivated by prohibited discrimination against Plaintiff, she has failed to meet the fourth element. Accordingly, as Plaintiff has not sufficiently pled the third or fourth elements of a Section 3617 claim, the Court must grant Defendants' motion to dismiss.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. This claim is DISMISSED with prejudice. Additionally, the Court wishes to remind the parties, particularly Plaintiff and her counsel, that "civility in litigation is extremely important to the practice of law in this Circuit and in all other courtrooms." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 946 (7th Cir. 1997). The level of personal acrimony in this litigation has been regrettable and both parties should, in the future, endeavor to not allow personal feelings to affect their litigation strategies.[9]

ENTERED: _____
Chief Judge Rubén Castillo
United States District Court

Dated: April 13, 2016

---

[9] Plaintiff's filings are particularly disappointing on this score. Particular instances include, but certainly are not limited to, the irrelevant suggestion that Defendants have an improper relationship with certain state-court judges, (R. 81, Pl.'s Resp. at 2), frequent derogatory and unnecessary asides, (*e.g.*, *id.* at 3 ("Apparently fresh out of lawyers willing to participate in his antics, Fenton has filed a *pro se* appearance.")), and quibbling corrections of Defendants' citations, (*e.g.*, *id.* at 5, 7-8).